## DENNIS v. LARKIN.

1. Draft: LIABILITY FOR REFUSAL TO PERFORM DUTY. The defendant was duly drafted into the service of the United States in the first class or division, and the plaintiff was drawn in the second class or as an alternate; the defendant, though primarily liable to render the service, never responded but fled the country, and secreted himself beyond the control of the proper military authority: in consequence of which neglect and refusal the plaintiff was compelled to, and did, render said service: *Held*, that no action for damages could lie. COLE, J., *dissenting.*

### Appeal from Johnson District Court.

### WEDNESDAY, JANUARY 10.

THE petition alleges that in October, 1864, defendant was duly drafted into the military service of the United States, in the first class or division; that plaintiff was drawn in the second class or as alternate; that defendant, though primarily liable to render the service, fled the country to avoid the same, never has responded to his obligations under said draft, but secretes himself beyond the control of the proper military authorities. It is further alleged that in consequence of the neglect and refusal of defendant, plaintiff was required to render the said service, and did render the same, to his damage, &c.

To this petition there was a demurrer, which was sustained, and the plaintiff appeals.

*Robinson & Patterson* for the appellant.

*Fairall & Boal* for the appellee.

WRIGHT, J. — This, it must be admitted, is a novel action, and yet plaintiff should not for this reason be 1. DRAFT: denied relief, if entitled thereto, upon any fair liability for; legal ground. The duty of the defendant to refusal to perform duty. respond to the demand of the government was undoubted. Absconding or secreting himself so as to

avoid the draft, he was a deserter and liable to be dealt
with as such.   But the question is, did this give to plain-
tiff, drawn, as he claims, in the alternate class, a right of
action ?   It seems to us not, for reasons which we shall
briefly state.

Plaintiff seeks to bring his case within this proposition :
that " when a person has an important public duty to per-
form, he is bound to perform that duty, and if he neglects
and refuses so to do, and an individual, in consequence,
sustains an injury, that lays the foundation for an action
to recover damages by way of compensation for the injury
he has sustained." Brown's Legal Maxims, 156.   This
proposition, though abstractly ever so correct, has unques-
tionable reference, primarily, to public officers or corpora-
tions, upon whom, by law, particular duties are imposed,
as the cases cited to sustain it abundantly demonstrate.
Thus, in *Sutton* v. *Johnstone*, 1 Tenn., 493, the point
made was, whether an action obtained in favor of a subor-
dinate against his superior officer, for an act done
(maliciously) in the course of discipline, and under powers
incidental to the situation of the superior.   So in *Bartlett* v.
*Crozier*, 15 Johns., 251, the action was against an overseer for
neglecting willfully and carelessly to keep a bridge in repair,
whereby, &c.   And there again the cases cited to support
the text of 1 Hill. on Torts, 116, are of the same general
character.   Thus, *Griswold* v. *Gallup*, 22 Conn., 208, was
an action against a town for neglect to keep in repair a
public highway.   *Catchpole* v. *The Ambrogate, &c.*, 1 E. &
B., 111, was a case against a railroad company, for wrong-
fully omitting their statutory duty in regard to the transfer
of stock.   *Griffin* v. *Farewell*, 20 Vt., 151, was an action
for the wrongful suing out of an attachment.   *Sheldon* v.
*Fairfax*, 21 Vt., 102, was a case for neglect of defendant to
remove certain paupers, whereby plaintiffs were obliged
to incur certain expenses, &c.   And in *Henly* v. *Mayor of*

*Lynne*, 5 Bing., 91, plaintiff claimed that he suffered loss in consequence of the decay of certain sea walls, which the corporation was directed and required to repair, under the terms of a grant from the crown. And see *Russell* v. *Dennon*, 2 Term, 671; *Townsend* v. *Turnpike Co.*, 6 Johns., 90.

We need not do more to show the radical difference in principle between the cases cited and the one at bar. The plaintiff's case falls rather within the rule that the grievance complained of was against the entire community, no one of whom was injured more than another. Or the other as well established, that no action lies where the wrong complained of is remote, or does not produce the injury naturally, legally and directly. In law the immediate and not the remote cause of any event is regarded. Or, as this maxim is otherwise stated: "It were infinite for the law to consider the causes of causes, and their impulsions one upon another; therefore, it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree." Bac. Max. Reg., 1. The case is not analogous to those where, by some public wrong, the plaintiff claims to be especially and particularly injured, or to be particularly damaged. Thus we know that for a *common* nuisance a particular person shall not have his action, for by the same reason every one might have, and the wrong-doer would thereby be punished without limit, for one and the same cause. And it is equally true, we admit, that any one sustaining a particular damage thereby, may have his action. And the same is true of other general or public wrongs. This injury or damage, however, must result as the natural, legal and direct act of the party charged with the omission of duty or commission of the wrong. Not only so, but the loss claimed or charged must be brought about by the violation of the *legal rights* of others, or another.

Now, applying these well settled and undisputed rules, let us see what there is to sustain this action. By the desertion or failure of the defendant to answer the call of the government, we cannot see that plaintiff's legal rights were any more directly or necessarily affected, than those of any other citizen, or the community generally. The public generally was interested in defendant's discharge of the duties imposed upon him, to defend the cause of the country, when selected in the manner charged, but the plaintiff no more than any one else, was injured thereby or could complain of the same. His duty was no greater than that of plaintiff's. When plaintiff responded to the call, he was but discharging his patriotic duty, and he has no legal right to complain because others were not impelled by motives equally correct and commendable. That he happened to be drawn as defendant's alternate, could make no difference, for he might have been drawn in the first instance. It is as though defendant had failed to attend a term of court when summoned as a juror, and plaintiff had, because of such omission of duty, been required to serve for a week to the great injury of his private business. The duty of the defendant in this case at bar, only differs from the one put, in the peculiar nature of the trust imposed or possible injury resulting, and yet no one would certainly claim, that in the instance supposed, damages could be recovered. It must be remembered that the petition does not charge direct malice, nor yet special fraud. If so, plaintiff might, upon general and well recognized principles, have a cause of action. *Bartholomew* v. *Bentley*, 15 Ohio, 659. The fraud, if any, was practiced upon the nation, upon the public, and for this the perpetrator would be liable to the public, and not necessarily to the plaintiff, any more than if months prior to the draft, in fear of it, and for the purpose of avoiding it, he had put out an eye or cut off an arm. And

this is demonstrated by remembering that plaintiff was not the alternate of defendant specially. That is to say, that if two or three of those first drawn had failed to appear and respond to the call, plaintiff would have no greater ground of complaint against one than all. And the same would be true, if those first selected had, before that time, voluntarily disabled themselves from discharging the duties of a soldier. Whatever might be the rule where defendant, after both were drawn, and for the purpose of compelling plaintiff to enter the service, had disabled himself, it must be very clear, that there would be no action if the injury was inflicted before. Such a case would fall within that general class of accidents or damages resulting from injuries other than *legal* in their nature, and in which the law does not seek to, nor will it interfere. It is as though a stage proprietor should sue a contractor who undertook to supply coaches, for injury resulting from the breaking down of other coaches; and yet, while in such case there might be *damnum*, it would certainly be *absque injuria. Winterbottom* v. *Wright*, 10 Mees. & Wels., 109; and see, *Howland* v. *Vincent*, 10 Metc., 371.

COLE, J., *dissenting.* — I dissent from the conclusion reached by the majority opinion, as well as from its basis and reasoning. In my opinion, the case is within, and both justifies and calls for the application of a very plain and equitable principle, almost daily enforced in our courts, to wit, that where, by contract or by law, a duty is devolved upon a particular person, which he fails to discharge, whereby another is either damaged or required to perform the duty, such other shall have his right of action against the person failing.

Primarily, the obligations of patriotism rest equally and alike upon all citizens, and while they are subordinate to the obligations to the Creator, they are paramount to all

others, even to parents and families. But patriotism does not require, even in war, that every man shall enter and bear arms in the military service. The ordnance, quarter-master, commissary and what with them is called material of war, are as essential to ultimate victory as the brave soldiers, who by their support and use are able to gain the triumph. Since the government does not require or need the services of every citizen in actual arms-bearing, the duty is not devolved upon all and every one to bear arms.

But the government does need and require that a certain number of its citizens shall bear arms, and while it is the common duty of all to promptly volunteer to the extent of the government's need, yet, if there is a failure to do so, the government is clothed with the power to determine what particular citizens shall discharge the duty of actual arms-bearing.

When, by law, such citizens are selected for that service, what was before a common duty resting equally upon all, has now become *a fixed and definite duty devolved by law* upon such particular citizens. And the fact, that such duty, before it became fixed by law, was a common or indefinite duty of all, does not relieve the citizen selected from any of its obligations, or render his duty any the less fixed and certain.

It is not competent for the citizen, legally selected for and liable to do the duty, to absolve himself from any of his obligations or duties, or to say to his fellow citizen not thus selected, that the obligations of patriotism rest equally upon us, and it is as much your duty to enter the military service as it is mine, for the law has fastened the duty upon him, and that which was before but an imperfect obligation has been reduced to a perfect and definite duty. In other words, it becomes *a duty, devolved by law,* of a certain, fixed and definite character, and of the most perfect, as it is of the highest obligation. It is a duty as certain and honorable

as that of any officer upon whom the law devolves a duty; and from a willful and wrongful failure to discharge which a legal liability arises to indemnify any person damaged thereby.

It is averred, in the petition, that the defendant had been duly selected (or drafted) into the military service, and that he had been drawn in the first class and primarily liable to render such military service; and that the plaintiff had been selected or drafted in the second class or as alternate. That the defendant willfully failed and refused to fulfill his legal obligation, although duly notified of the same, but fled the country to avoid the same, and secretes himself beyond the control of the military authorities, whereby the plaintiff had been required to perform the duties devolved upon defendant to plaintiff's damage one thousand dollars. Now, it is clear to my mind, that there was a plain and perfect (moral and patriotic, as well as) legal duty devolved upon the defendant, which he having failed to perform, was certainly and legally required of the plaintiff. The plaintiff having performed the duties required of defendant in the defendant's stead, is entitled, upon plain legal principles, as well as *ex equo et bono*, to be compensated by the defendant to the extent of the damage resulting to him from such performance. His right to a recovery is just as plain, and rests upon the same legal principle as that which in contract compels a principal to refund to a surety, money paid under his obligation of suretyship; or that which in torts compels a supervisor or overseer of a highway whose duty it is to keep it in repair, to refund or pay a person the amount of damage suffered by reason of his failure to do his duty.

It is said, however, in the opinion just announced, that the law has denounced severe penalties against deserters, such as this defendant is shown by the petition to be, and hence, it is argued, he cannot properly be held liable in

this action. But this position is equally unsupported by the law as I think. If one person assaults another, he may be punished criminally for the wrong or injury to the public, and the assaulted party may recover, in a civil action, for the damage suffered by him individually. So also, in our State, and most other States of the Union, a person committing a crime, even murder, may be punished criminally, and made civilly liable also. Such, indeed, is the general rule, and I can see no reason for exempting a traitorous or cowardly deserter from its just application.

In my opinion, the defendant was bound, not only by a plain, perfect and fixed legal duty to discharge his duties in the military service, but there were resting upon him the higher obligations of patriotism, prompting to, and requiring their discharge. While the law may not take cognizance and enforce the latter, it may fully recognize and enforce the former; and it appears to me that public policy requires rather than discourages such cognizance and enforcement. If a citizen may, as is alleged against this defendant, disregard his plain and ascertained legal duty, to enter the military service, and either flee the country or conceal himself to avoid it, leaving to others more brave and patriotic, the discharge of his duties till the war is over, and then, taking advantage of the joyousness of the triumph and the era of good feeling and charity overflowing in a general amnesty, returns to his home, and the enjoyment of the fruits of victory and peace secured by others, without a resulting liability for his faithlessness, and wrongs to those damaged thereby, then indeed is the law a mockery and justice a myth.

But I am told in consultation, that if we sustain this kind of action, it would result in numberless suits throughout the State. I acknowledge the force of this argument, for it is the duty of judges and of courts to repress litigation. Yet, when I reflect that justice requires, that those faith-

lessly disregarding the duty they owed their country in time of great peril, should at least compensate those who rendered service in their stead; and that the penalties and burdens would fall alone upon those who by their faithlessness had avoided the burdens of the contest. I am the more unwilling to interfere with the just equipoise of the scales. I would let justice be done, the law vindicated, and true patriotism rewarded.

Nor is there any force, to my mind, in the objection that the damages claimed are remote. They are not; besides, that question is not before us. When the plaintiff undertakes to prove his damages he must prove proximate or immediate, not remote damages. He may show that the law under which the draft was made, as in this case, provided a commutation of three hundred dollars, or if no such commutation is fixed, then the fair value of substitutes in that district, or the like. He could not, of course, show that he contracted disease in the service, or was wounded, or the like causes, in aggravation of damages, because such would be too remote.

It is averred in this case that the defendant was able and duly liable to render the service. If he should be able to show that he was exempt from service by reason of any of the disabilities provided by the statute, such showing would defeat the action, unless it should appear that such disability was caused by his own wrongful act, after his liability became fixed by draft.

I have already occupied more space than I intended, but I felt it to be a clear duty to express my dissent and some of the reasons for it. In my opinion the demurrer should have been overruled, and, therefore, that the judgment of the District Court should be reversed.

Affirmed.